UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 28, 2013

LETTER TO COUNSEL:

>  RE: *Colleen Michele Devaney v. Commissioner, Social Security Administration*;
>  Civil No. SAG-12-3081

Dear Counsel:

On October 18, 2012, the Plaintiff, Colleen Devaney, petitioned this Court to review the Social Security Administration's final decision to deny her claims for supplemental security income ("SSI") and disability insurance benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Ms. Devaney's reply. (ECF Nos. 16, 20, 21). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Ms. Devaney filed her claims on May 15, 2009, alleging disability beginning on August 20, 2007. (Tr. 117-20). Her claims were denied initially on November 4, 2009, and upon reconsideration on July 15, 2010. (Tr. 80-88). A hearing was held on March 23, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 36-75). Following the hearing, the ALJ determined that Ms. Devaney was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 21-35). The Appeals Council denied Ms. Devaney's request for review (Tr. 3-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Devaney suffered from the severe impairments of Lyme disease, chronic pain syndrome, chronic fatigue syndrome, gastritis, and depression. (Tr. 23). Despite these impairments, the ALJ determined that Ms. Devaney retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, can stand and walk for 2 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. The claimant can occasionally stoop, crouch, crawl, balance, kneel, squat and climb stairs but should avoid exposure to hazards, ladders, scaffolds, dangerous heights and dangerous machinery, and avoid concentrated exposure to heat, cold, humidity, dust, fumes, gases and vibrations. The claimant can understand, remember and carry out simple one to two step instructions.

(Tr. 26). After considering the testimony of a vocational expert, the ALJ determined that Ms. Devaney could not perform her past relevant work as a waitress/bartender, preschool teacher, veterinarian's assistant, or retail salesperson. (Tr. 33). However, considering Ms. Devaney's age, education, work experience, and RFC, the ALJ determined that there are jobs existing in significant numbers in the national economy that Ms. Devaney can perform. (Tr. 34).

Ms. Devaney presents several challenges to the ALJ's RFC finding. First, Ms. Devaney argues that the mental limitation in the RFC was not supported by substantial evidence. Second, Ms. Devaney argues that the ALJ failed to weigh the opinion of Dr. Jemsek, resulting in an incomplete assessment of her medical record. Third, Ms. Devaney contends that the ALJ selectively picked various reports in the medical record to support the conclusion that Ms. Devaney had a normal range of functional abilities. Each argument lacks merit.

Ms. Devaney's first argument consists of several sub-parts. She argues that the ALJ's RFC, which provided, in part, that Ms. Devaney can "understand, remember and carry out simple one to two step instructions," was unsupported by substantial evidence. Pl.'s Mot. 15. She also argues that the ALJ improperly weighed the opinion of a social worker, Ms. Sauro, who concluded in a treatment summary that Ms. Devaney could follow one and two-step instructions only "occasionally (1-2 days/wk)," and that her "fatigue and concentration made it difficult for her to complete simple tasks." (Tr. 642). Ms. Devaney contends that the ALJ's failure to consider the "occasional" nature of her ability to perform simple instructions impacted the ALJ's conclusions at step five of the sequential analysis. Pl.'s Mot. 16-18. At step five, the ALJ posed a hypothetical to the VE, which did not include a limitation on Ms. Devaney's ability to carry out one and two-step instructions. Thus, Ms. Devaney argues, the VE overrepresented the occupations that were available to Ms. Devaney. I disagree.

The ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir. 1986)). In the ALJ's first hypothetical, she posed the following: "[Ms. Devaney] can understand, remember and carryout simple instructions, one and two-step instructions with no problem at all, and at the level of simple instructions…she may have to concentrate a bit, but at simple instructions she can concentrate and pay attention at that level of complexity…" (Tr. 70). Substantial evidence exists in the record to support this restriction. The ALJ discussed this evidence in her assignment of weight to Ms. Sauro's opinion.

The ALJ accorded great weight to Ms. Sauro's opinion regarding Ms. Devaney's ability to follow one and two-step instructions. However, the remainder of Ms. Sauro's opinion was inconsistent with the record, and given "little weight." (Tr. 33). Social workers are not considered "acceptable medical sources" whose medical opinions may be entitled to controlling weight. SSR 06-03p. The ALJ properly set forth the standard for evaluating medical sources that do not fall under the "acceptable medical source" standard. (Tr. 32). One factor for evaluating the opinions of "other sources" includes consideration of "how consistent the opinion

is with other evidence." SSR 06-03p. Ms. Sauro stated that Ms. Devaney had poor concentration and "frequent periods of brain fog." (Tr. 641). Ms. Sauro also indicated that Ms. Devaney's ability to relate to others was "dramatically affected" and that attending work would be "a serious problem." (Tr. 642). The ALJ concluded that Ms. Sauro's opinion was inconsistent with: (1) Ms. Sauro's own treatment summary, which indicated that Ms. Devaney was responding well to mental therapy sessions; (2) Ms. Devaney's admission that she was a social person and had no issues with authority figures; (3) evaluation notes from Dr. Malik and Dr. Abbas showing that Ms. Devaney did not have impaired concentration; and (4) Ms. Devaney's admission that her mental status had substantially improved. (Tr. 33). I agree.

A review of the inconsistencies between Ms. Sauro's treatment summary and the medical evidence of record supports the ALJ's decision to give the bulk of the summary little weight. Ms. Sauro's treatment summary stated that although Ms. Devaney had a "fair" to "good" response to therapy, she was "working to maintain [a] fragile stability." (Tr. 640). Ms. Sauro also stated that the goal of therapy was for Ms. Devaney "to find enough energy and will to keep seeking treatment for Lyme Disease." (Tr. 642). At her hearing, Ms. Devaney admitted that she was "starting to feel better," and had "seen an improvement" in her condition. (Tr. 48, 54). Ms. Devaney's hearing testimony also suggested that she has no problem relating to others. Ms. Devaney stated that she "enjoy[s] spending time with friends" and that on occasion, a best friend from Delaware visits her. (Tr. 48-49). Finally, the reports from two consultative examiners, Dr. Malik and Dr. Abbas, both showed normal cognitive function and abstract thinking. (Tr. 557, 741). A mental RFC assessment indicated that Ms. Devaney had no significant limitations in her ability to understand and carry out short and simple instructions, or to make simple work-related decisions. (Tr. 762). Therefore, I find the ALJ's assignment of "little weight" to the bulk of Ms. Sauro's summary to be supported by substantial evidence in the record. Accordingly, I also uphold the ALJ's mental restriction as set forth in both the hypothetical to the VE, and in the RFC.

Ms. Devaney next argues that the ALJ failed to assign weight to the opinion of a treating physician, Dr. Jemsek. However, a review of the medical evidence shows two records from Dr. Jemsek, neither of which contains an opinion as to Ms. Devaney's ability to perform specific work related activities. The December 22, 2009 record contains a narrative of Dr. Jemsek's impressions and recommendations following his initial evaluation of Ms. Devaney. (Tr. 621-28). In this evaluation, Dr. Jemsek noted that Ms. Devaney was "fatigued during the examination" and "had frequent repetitive dystonic movement with jerking mainly of the upper body, face, head and neck area." (Tr. 626). However, Dr. Jemsek did not opine as to whether these symptoms affected Ms. Devaney's ability to perform work-related activities. *Id.* The evaluation also contained rankings regarding the severity of Ms. Devaney's symptoms in several areas, such as "cognitive dysfunction." (Tr. 623). Ms. Devaney ranked her cognitive dysfunction at "5-6" on a scale of 10, and an accompanying description provided that Ms. Devaney "has had more panic attacks in the last year than she had in the past." *Id.* These rankings and descriptions were provided to Dr. Jemsek by Ms. Devaney, and the ALJ concluded that Ms. Devaney's subjective complaints were not credible. (Tr. 33). Moreover, given the lack of a longitudinal relationship between Ms. Devaney and Dr. Jemsek at the time of the December 22, 2009 report, his

evaluation is entitled to no greater weight than the consultative examiners' reports, with which they were inconsistent. *Compare* (Tr. 621-27), *with* (Tr. 553-58, 737-42). The second medical record contains notes from a conversation between Dr. Jemsek and Ms. Sauro on February 3, 2010. (Tr. 628). These notes indicate that Dr. Jemsek has seen Ms. Devaney only twice. *Id.* They too are devoid of any opinion regarding Ms. Devaney's ability to perform work-related functions. While an ALJ must make an assignment of weight to a medical opinion, the ALJ need not assign weight to every treatment note or medical report. The ALJ appropriately considered and summarized Dr. Jemsek's notes. (Tr. 28). Therefore, I find that the ALJ's decision to not assign specific weight to Dr. Jemsek's records does not warrant remand.

Finally, Ms. Devaney argues that the ALJ "cherry picked" portions of various medical and function reports to improperly conclude that she has a normal range of functional abilities. Pl.'s Mot. 28. The ALJ pointed to two consultative examinations and an Adult Function Report to reach the conclusion that Ms. Devaney "has performed a generally normal range of functional abilities, which is inconsistent with a finding of disability." (Tr. 30). An October 15, 2009 consultative examination report from Dr. Malik stated that Ms. Devaney was "not able to do usual cleaning," and had trouble vacuum cleaning. (Tr. 555). A June 7, 2010 consultative examination report from Dr. Abbas noted that Ms. Devaney could not cook or clean. (Tr. 739). In both doctors' reports, however, Ms. Devaney stated that she could clean dishes, wash laundry, bathe, and brush her teeth. (Tr. 555, 739). Both reports also stated that Ms. Devaney had friends, got along with others, and was social. *Id.* Ms. Devaney's own Adult Function Report corroborated the consultative examinations. In the report, Ms. Devaney stated that, "on a good day" she could "put in a load of laundry and perform personal care tasks such as dressing, bathing, and shaving." (Tr. 173-74). Furthermore, Ms. Devaney stated at the hearing, and in an affidavit, that she was enrolled in a phlebotomy course at a community college that met twice a week for four hours at a time. (Tr. 42, 47, 256).

Substantial evidence of Ms. Devaney's functional abilities exists elsewhere in the record. In one report, Ms. Devaney stated that she could perform "light housework" such as dusting, using a hand vacuum, and sorting and folding laundry. (Tr. 131). In another report, an examiner concluded that Ms. Devaney "should not have difficulty in doing work-related activities such as sitting, standing, walking, lifting, carrying, and handling objects." (Tr. 744). As a result, I find that the ALJ's conclusion that Ms. Devaney has a normal range of functional abilities to be supported by substantial evidence. Moreover, an ALJ is not required to address every piece of evidence in the record, so long as a reviewing court can determine from the opinion "what the ALJ did and why he did it." *Piney Mountain Coal Co. v. Mays,* 176 F.3d 753, 762 n.10 (4th Cir. 1999) (citing *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs,* 137 F.3d 799, 803 (4th Cir.1998)); *see also Melgarejo v. Astrue,* No. JKS 08–3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009) (all holding that an ALJ's duty to explain his findings and conclusions on all material issues of fact or law is satisfied when a reviewing court can determine, from an ALJ's opinion and the evidence of record, how he reached his conclusion). While it might be equally possible to select excerpts from the medical evidence to support a determination of disability, the function of this Court is not to review Ms. Devaney's claims *de novo* or to reweigh the evidence of record. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Rather, this

Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see* 42 U.S.C. § 405(g). I find that it is.

Thus, for the reasons given, Ms. Devaney's Motion for Summary Judgment (ECF No. 16) will be DENIED, and the Commissioner's Motion for Summary Judgment (ECF No. 20) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge